UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LENARD SHEYLETH BERNARDEZ MELENDEZ,

                                 Plaintiff,

           -against-

MOKBAR LLC, MOKBAR II, LLC, and
ESTHER CHOI, *individual*,

                                 Defendants.
------------------------------------------------------------------X

**COMPLAINT and
DEMAND for JURY
TRIAL**

Civil Action No. _____

## PRELIMINARY STATEMENT

1.      Plaintiff LENARD SHEYLETH BERNARDEZ MELENDEZ ("Plaintiff" or "Ms. Bernardez") brings this action seeking unpaid wages, including unpaid overtime compensation and interest, liquidated damages and other penalties, equitable relief, and reasonable attorney's fees and costs for violations of the Fair Labor Standards Act of 1938 ("FLSA"), the New York State Labor Law, as amended, and associated regulations (collectively "NYLL"), The New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

2.      Ms. Bernardez is a transgender woman and an immigrant from Honduras who has applied for asylum in the United States after having suffered threats and violence in her home country due to her gender identity. She began working for Defendants at the Manhattan location of their restaurant, Mokbar, in approximately August of 2017, and her employment with Defendants ended for good in December of 2018.

3.      During Ms. Bernardez's employment with Mokbar, Defendants refused to pay her the lawful minimum wage or any lawful overtime compensation she earned. Instead, Defendants took advantage of Ms. Bernardez's status as a vulnerable immigrant desperate for steady

employment and illegally underpaid her for the entire first year she worked for them. When she asked to be compensated lawfully and fairly, Defendants terminated her employment.

4.      By this and other actions described below, Defendants have violated Plaintiff's rights under the FLSA, NYLL, and New York State and City Human Rights Laws.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which states that an action to recover for FLSA violations "may be maintained against any employer… in any Federal or State court of competent jurisdiction," and pursuant to 28 U.S.C. § 1331, because Plaintiff pleads a civil cause of action arising under federal law. This court has supplemental jurisdiction over the state and local claims raised herein pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b). The Southern District of New York is the judicial district in which Defendant Mokbar II, LLC, is located, and in which Defendants do business from their restaurant located at 75 Ninth Avenue, New York, NY 10011.

## PARTIES

7.      Plaintiff LENARD SHEYLETH BERNARDEZ MELENDEZ is a transgender woman from Honduras who currently resides in the Bronx, New York. She has lived in the Bronx at all times relevant to this action.

8.      Defendant MOKBAR LLC is a private company whose business address on the New York Department of State website is listed as 232 Powers Street Apt. 3, Brooklyn, New York, 11211.

9.      Defendant MOKBAR II, LLC is a private company whose business address on

the New York Department of State website is listed as 75 9th Avenue, New York, NY 10011.

10.     Defendant ESTHER CHOI is the registered agent of Defendant MOKBAR, LLC, and the owner and chef of the restaurant known as Mokbar.

11.     On information and belief, the individual and corporate Defendants collectively own and operate Mokbar.

12.     According to its website, the restaurant Mokbar specializes in "Korean Flavors and Ramen." The restaurant operates out of two locations, one at 75 9th Avenue, New York, New York 10011 ("Chelsea Market") and one at 212 Flatbush Avenue, Brooklyn, New York 11217. See http://www.mokbar.com.

13.     On information and belief, Mokbar regularly engages in interstate commerce. It has two locations in New York City, but, according to its website, it purchases noodles for its ramen dishes from New Jersey. See https://www.mokbar.com/about-us (last visited July 25, 2019).

14.     Ms. Bernardez regularly engaged in interstate commerce as part of her employment with Mokbar, in part through her preparation of food purchased via interstate commerce and, on information and belief, through her work at events that catered to tourists, business people, or others from outside of the State of New York.

15.     On information and belief, Mokbar employed fifteen or more people at all times during Ms. Bernardez's employment.

16.     Mokbar is an employer subject to the FLSA, the NYLL, NYSHRL, and the NYCHRL.

## STATUTORY AND REGULATORY SCHEME

### The Fair Labor Standards Act ("FLSA")

17.     The purpose of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, is to "correct and eliminate" practices that perpetuate poor labor conditions and unfair competition among businesses engaged in interstate commerce and impede the flow of goods in commerce. 29 U.S.C. § 202.

18.     To that end, the FLSA provides that "[e]very employer shall pay each of [its] employees" not less than the minimum hourly wage prescribed by law. 29 U.S.C. § 206(a).

19.     If the minimum wage required under applicable state law is higher than that required by the FLSA, the FLSA provides that employers must pay their employees at least the state minimum wage. 29 U.S.C. § 218(a).

20.     The FLSA also provides that "no employer shall employ any of his employees… for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

21.     Furthermore, the FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" under the FLSA. 29 U.S.C. § 215(a)(3).

### New York Labor Law ("NYLL")

22.     The New York Labor Law protects workers in the State of New York by establishing rules regarding minimum wages, overtime wages, retaliation, recordkeeping violations, and failure to provide itemized wage statements. See N.Y. Lab. Law §§ 190 *et seq*.

23.     The NYLL applies to employers in New York, which it defines as "any

individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." N.Y. Lab. Law § 651.

24.     Employers are required to pay a minimum wage to all non-exempt workers. N.Y. Lab. Law § 652.

25.     Employers are further required to pay all non-exempt employees an overtime rate of one and one-half times the regular rate for hours worked in excess of forty hours. N.Y. Lab. Law § 650 *et seq.*, 12 N.Y.C.R.R. § 142-2.2.

26.     Additionally, the NYLL prohibits employers from discharging or otherwise retaliating against an employee for making a complaint or asserting her rights under this statute. N.Y. Lab. Law § 215.

### The New York State Human Rights Law ("NYSHRL")

27.     The New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, provides employees who work in New York City with protection against various types of discrimination.

28.     Specifically, the NYSHRL prohibits "an employer or licensing agency" to discriminate against any person in the "compensation, terms, conditions or privileges of employment" on the basis of that person's national origin. N.Y. Exec. Law § 296(a).

29.     The NYSHRL defines an "employer" as a person or entity with four or more persons in its employ. N.Y. Exec. Law § 292(5).

### The New York City Human Rights Law ("NYCHRL")

30.     The New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.*, provides employees who work in New York City with protection against various types of discrimination.

31.     Specifically, the NYCHRL prohibits "an employer . . . or agent thereof" to discriminate against any person in the compensation, terms, privileges or conditions of employment on the basis of that person's national origin, alienage, or citizenship status. N.Y.C. Admin. Code § 8-107(1)(a).

32.     The NYCHRL defines an "employer" as a person or entity with four or more persons in its employ. N.Y.C. Admin. Code § 8-102.

33.     The NYCHRL defines "alienage or citizenship status" as "the citizenship of any person" or the "immigration status of any person who is not a citizen or national of the United States." N.Y.C. Admin. Code § 8-102.

34.     The NYCHRL is to be construed liberally pursuant to Section 8-130.

## STATEMENT OF FACTS

35.     Plaintiff Sheyleth Bernardez is a transgender woman who was born in Honduras. She immigrated to the United States to escape violence and persecution in her home country.

36.     Ms. Bernardez is a native Spanish speaker with limited English proficiency (LEP).

37.     In August 2017, Ms. Bernardez began working for Defendants at Mokbar's Chelsea Market location, 75 Ninth Avenue, New York, New York.

38.     Ms. Bernardez was hired as a member of the kitchen staff. Many of her coworkers in Mokbar's kitchen were immigrants and LEP Spanish-speakers, as well.

39.     Ms. Bernardez's employment duties included food preparation, cleaning, and, occasionally, delivery and set-up of food for catered events.

40.     Because her daily duties included food preparation, and Mokbar purchases ingredients from states other than New York (specifically, New Jersey) to be prepared and sold

in New York, Ms. Bernardez regularly worked with goods associated with interstate commerce as part of her employment.

41.     Ms. Bernardez generally worked four or five days per week, depending on how busy the restaurant was. During her first thirteen months of employment – the period relevant to this action – her hours ranged from approximately 32 to 55 hours per week.

### Failure to Pay Lawful Minimum Wage

42.     When she began her employment in August 2017, Defendants paid Ms. Bernardez a wage of $10.00/hour. She was never told she would receive tips for her work, and indeed, she did not receive any tips, even when she performed food deliveries.

43.     In approximately mid-April of 2018, Mokbar increased Ms. Bernardez's hourly pay to $11.00. She still was never told she would receive tips for her work and never received any tips for her work.

44.     Mokbar terminated Ms. Bernardez's employment on or about September 9, 2018.

45.     Under New York state law, the lawful minimum wage in New York City for an employer of Mokbar's size from the time Ms. Bernardez began working for Mokbar (August 2017) until December 31, 2017, was $11.00/hour.

46.     From January 1, 2018 until December 31, 2018, the lawful minimum wage for an employer of Mokbar's size in New York City was $13.00/hour.

47.     On information and belief, at all times relevant to this action, Defendants were aware of their obligations under state and federal wage and hour laws, including their obligation to pay all covered employees the lawful minimum hourly wage in New York City.

48.     In fact, in February of 2018, Mokbar was sued for wage-and-hour violations for failure to pay minimum wage and overtime to its employees. See Kaewjino v. Mokbar II, LLC,

7

Compl., Dkt. 1, No. 18-cv-01558 (S.D.N.Y.). Therefore, Defendants unquestionably have been aware of their obligations under the FLSA and NYLL since at least February 2018.

49.     Mokbar settled the case filed by those employees via agreement dated August 31, 2018. See Kaewjino v. Mokbar II, LLC, Settlement Agreement, Ex. A, Dkt. 37, No. 18-cv-01558 (S.D.N.Y.).

50.     Despite the previous lawsuit for the same type of unlawful activity alleged herein, at no time between August 2017 and September 9, 2018, did Defendants pay Ms. Bernardez the lawful minimum wage for her work.

**Failure to Pay Overtime Compensation**

51.     In addition to failing to pay Ms. Bernardez the lawful minimum wage for hours worked between August 2017 and September 9, 2018, Mokbar also failed to pay Ms. Bernardez lawful overtime compensation during that period.

52.     Pursuant to the FLSA and NYLL, an employee is entitled to overtime compensation for hours worked above forty (40) in a work week.

53.     Lawful overtime compensation pursuant to the FLSA and NYLL is one-and-a-half (1.5) times an employee's standard pay rate, and the standard pay rate must be at least equal to the lawful minimum wage.

54.     Each month from August 2017 until September 9, 2018, Ms. Bernardez worked approximately five days per week, except for in January 2018, when she worked an average of four days per week.

55.     During the thirteen-month period from August 2017 until September 9, 2018, Ms. Bernardez worked an average of 46 hours per week.

56.     Specifically, Ms. Bernardez worked an average of forty (40) hours per week in August 2017.

57.     Ms. Bernardez worked an average of forty-four (44) hours per week in September 2017.

58.     She worked an average of forty-two (42) hours per week in October 2017.

59.     She worked an average of fifty-eight (58) hours per week in November 2017.

60.     She worked an average of forty-eight (48) hours per week in December 2017.

61.     She worked an average of thirty-two (32) hours per week in January 2018.

62.     She worked an average of forty-five (45) hours per week in February 2018.

63.     She worked an average of forty-four (44) hours per week in March 2018.

64.     She worked an average of forty-five (45) hours per week in April 2018.

65.     She worked an average of forty-eight (48) hours per week in May 2018.

66.     She worked an average of fifty-one (51) hours per week in June 2018.

67.     She worked an average of fifty-four (54) hours per week in July 2018.

68.     She worked an average of fifty-two (52) hours per week in August 2018.

69.     Finally, she worked approximately forty (40) hours the week of September 2, 2018 through September 8, 2018.

70.     Despite frequently working more than forty hours per work week, at no point during her employment with Mokbar did Ms. Bernardez receive overtime compensation for her work. Rather, she was paid at the same unlawful hourly rate no matter how many hours she worked in a week.

71.     At all times relevant to this action, Defendants were aware of their obligations under state and federal wage and hour laws, including their obligation to pay all covered

employees overtime compensation at a rate of one-and-a-half times the lawful minimum wage for hours worked over forty in a work week.

## Retaliation and Unlawful Termination

72.     In or about Summer 2018, Ms. Bernardez became aware that Defendants were not paying her the lawful minimum wage for her work.

73.     She raised this issue with a Mokbar manager named Lisa in or about August 2018. At that time, Ms. Bernardez asked to be paid the lawful minimum wage and for Mokbar to report her wages to the appropriate government entities so that she would be entitled to receive health insurance benefits.

74.     Ms. Bernardez typically spoke with Lisa about her employment concerns because Lisa spoke Spanish, while Defendant Choi did not.

75.     On information and belief, Lisa was a manager at Mokbar but did not have the power to unilaterally determine Ms. Bernardez's pay rate. Lisa reported to Defendant Choi and Defendant Choi was the ultimate decision-maker.

76.     After Ms. Bernardez asked to be paid the lawful minimum wage, Lisa told Ms. Bernardez that Defendants would pay her lawfully after she provided Defendants with proper employment authorization documentation.

77.     In early August 2018, Ms. Bernardez provided Lisa with her employment authorization card. Thereafter, Lisa told her she would begin to receive the correct pay in a few weeks.

78.     Four weeks later, however, in or about the end of August 2018, Ms. Bernardez was still being paid less than the lawful minimum wage for her work. She again asked Lisa to be paid correctly.

79.    In response, Lisa began telling Ms. Bernardez she was a bad employee. She told Ms. Bernardez that she took too many breaks, was not working hard enough, and was not pulling her weight on the job.

80.    Prior to Ms. Bernardez's asking to be paid the lawful minimum wage, Lisa had never complained about Ms. Bernardez's work ethic or about her taking too many breaks.

81.    Ms. Bernardez had always been a hard worker during her employment at Mokbar. Her work habits were consistent throughout her employment, including before and after the period in which she asked Lisa to be paid lawfully.

82.    On or about September 9, 2018, Lisa called Ms. Bernardez and told her not to return to work. Ms. Bernardez asked why, and she was told that she was no longer needed at Mokbar.

83.    Ms. Bernardez suffered substantial financial harm and emotional distress as a result of Mokbar's termination of her employment, including lost wages during the period of unemployment, humiliation, and anxiety.

84.    On information and belief, the only reason Ms. Bernardez was fired on September 9, 2018, was because she complained about her unlawful wages and asked to be paid the lawful minimum wage.

85.    Indeed, Ms. Bernardez was terminated only a few weeks after asking to be paid the lawful minimum wage and mere days after Defendants settled a separate case alleging wage-and-hour violations on behalf of other Mokbar employees. See Kaewjino v. Mokbar II, LLC, Settlement Agreement, Ex. A, Dkt. 37, No. 18-cv-01558 (S.D.N.Y.).

86.    In or about the first week of November 2018, Ms. Bernardez was rehired at Mokbar. At that time, Lisa told her she was a good employee who should not have been fired.

87.     Ms. Bernardez returned to work for Defendants in November 2018 but ultimately resigned in December 2018 because she was no longer being provided with steady work hours.

88.     On information and belief, Defendants failed to provide Ms. Bernardez with steady hours upon her return to work in retaliation for her demanding to be paid lawfully.

## Discrimination on the Basis of National Origin

89.     Ms. Bernardez is an immigrant from Honduras. She left her home country because she is a transgender woman and faced gender-based violence and discrimination there.

90.     As an immigrant, a transgender woman, and an LEP Spanish-speaker, Ms. Bernardez is particularly vulnerable to exploitation.

91.     On information and belief, Defendants preyed upon Ms. Bernardez's vulnerabilities and took advantage of her because they expected that a person in her position and with her background would not risk complaining about being paid less than the lawful minimum wage.

92.     On information and belief, at least one other colleague of Ms. Bernardez's in the kitchen at Mokbar was also an immigrant woman from Central America and an LEP Spanish-speaker, and that woman was not paid the minimum wage, either.

93.     On information and belief, Defendants do not have any U.S.-born employees whom they have refused to pay the minimum wage.

94.     Defendants' actions violate the New York State Human Rights Law's prohibition on discrimination based on national origin and the City Human Rights Law's prohibition on discrimination based on national origin, alienage, or citizenship status in employment.

## CAUSES OF ACTION

### First Cause of Action:

### (Failure to Pay Overtime in Violation of FLSA)

95.     Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

96.     The FLSA requires covered employers, such as Defendants, to pay all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

97.     "If the employee's regular rate of pay is higher than the statutory minimum, his overtime compensation must be computed at a rate not less than one and one-half times such higher rate." 29 C.F.R. § 778.107.

98.     Plaintiff is not an exempt employee and is entitled to overtime under the FLSA.

99.     At all times relevant to this action, Defendants were aware that Plaintiff was a non-exempt employee who worked overtime for Defendants. However, Defendants never paid Plaintiff overtime pay for hours worked in excess of 40 hours per workweek.

100.    As a result of Defendants' failure to pay Plaintiff overtime at a rate of one and one-half times the lawful minimum wage for hours worked in excess of 40 hours per workweek, Defendants violated the FLSA. 29 U.S.C. § 207.

101.    The above-described conduct of Defendants constitutes a willful violation of the FLSA.

102.    As a result of Defendants' violation of the FLSA, Plaintiff is entitled to recover damages that arose as a result of Defendants' actions, including liquidated damages, and any

other legal or equitable relief as may be appropriate to effectuate the purposes of Section 207 pursuant to 29 U.S.C. § 216(b).

## Second Cause of Action:

### (Retaliation in Violation of FLSA)

103.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

104.    This count sets forth a claim by for declaratory relief, injunctive relief, and damages for Defendants' violations of the FLSA's anti-retaliation provisions.

105.    Plaintiff complained to the Defendants in or about August 2018 about her right to be paid minimum wage.

106.    In response to these complaints, Defendants unlawfully retaliated against Plaintiff by firing her in or about September 2018.

107.    Defendants further retaliated against Plaintiff by refusing to provide her with steady work hours similar to those she had worked prior to her unlawful termination after they rehired her at a lawful hourly wage in November 2018.

108.    Defendants' above-described conduct violated the FLSA's prohibition on retaliation, 29 U.S.C. § 215(a)(3).

109.    As a result of Defendants' unlawful and retaliatory conduct, Plaintiff suffered substantial financial and emotional distress.

110.    As a result of Defendants' violations of the FLSA, Plaintiff is entitled to recover damages that arose as a result of Defendants' actions, including liquidated damages, and any other legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3), pursuant to 29 U.S.C. § 216(b).

### Third Cause of Action

### (Failure to Pay Minimum Wage in Violation of NYLL)

111.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

112.    NYLL requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked. N.Y. Lab. Law § 652.  Plaintiff was not exempt from the requirement that Defendant pay her the prevailing minimum wage under the NYLL.

113.    Defendants have willfully failed to pay Plaintiff the wages she is due in violation of New York Labor Law §§ 190 *et seq.*, including, but not limited to, §§ 190, 191, 193, 198, 652, and 663(1).

114.    Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's wages that concern this lawsuit.

115.    Defendants were not and are not authorized by Plaintiff to withhold, divert, or deduct any portion of the unpaid wages which are the subject of this lawsuit.

116.    At no time during Plaintiff's fist employment with Defendants, from August 2017 until September 2018, did Defendants pay the Plaintiff the applicable minimum wage for any hours worked.

117.    The abovementioned conduct of Defendants' constitutes a willful violation of the NYLL.

118.    Pursuant to New York Labor Law § 198, employers who intentionally fail to pay hourly employees wages in conformance with the NYLL shall be liable to such employees for

the wages that were intentionally not paid, plus liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

119.    Defendants have violated the NYLL by intentionally failing to pay Plaintiff for all compensable time and intentionally failing to pay Plaintiff the prevailing minimum wage for hours worked.

120.    Plaintiff seeks the amount of underpayments based on the Defendants' failure to pay the prevailing minimum wage for all hours worked as provided by the NYLL, as well as liquidated damages, reasonable attorneys' fees and costs of this action, and such other legal and equitable relief as the Court deems just and proper.

## Fourth Cause of Action

### (Failure to Pay Overtime in Violation NYLL)

121.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

122.    The overtime compensation provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff here.

123.    NYLL and its implementing regulations require covered employers, such as Defendants, to pay all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek. 12 N.Y.C.R.R § 142-2.2

124.    At all times relevant to this action, Defendants were aware that Plaintiff was an employee entitled overtime compensation and that she worked overtime for Defendants.

125.    Defendants knowingly failed to pay Plaintiff overtime compensation she is owed under the NYLL and the supporting New York State Department of Labor Regulations.

126.    By Defendants' knowing and/or intentional failure to pay Plaintiff overtime compensation for all hours worked in excess of forty (40) hours in a week, Defendants have willfully violated New York Labor Law §§ 190, *et. seq.*, including, but not limited to, §§ 190, 191, 193, 198, and §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

127.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid overtime wages, plus liquidated damages, attorneys' fees and costs, and pre-judgment and post-judgment interest. N.Y. Lab. Law §§ 662, 663.

### **Fifth Cause of Action**

### **(Retaliation in Violation of NYLL)**

128.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

129.    Pursuant to Section 215 of the NYLL, "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" because such employee has made a complaint regarding, or asserted his, her, or their rights under, the provisions of the New York Labor Law. N.Y. Lab. Law § 215(1)(a).

130.    Plaintiff complained to Defendants in or about August 2018 about her right to be paid minimum wage.

131.    In response to these complaints, Defendants unlawfully retaliated against Plaintiff by firing her in or about September 2018.

132.     Defendants further retaliated against Plaintiff by refusing to provide her with steady work hours similar to those she had worked prior to her unlawful termination after they rehired her at a lawful hourly wage in November 2018.

133.     The above-described conduct violated Section 215 of the New York Labor Law.

134.     As a result of Defendants' unlawful and retaliatory conduct, Plaintiff suffered substantial financial and emotional harm.

135.     Plaintiff seeks damages resulting from Defendants' violation of NYLL Section 215, including liquidated damages and attorneys' fees and costs, as well as injunctive relief and such other legal and equitable relief as the Court deems just and proper.

<u>**Sixth Cause of Action:**</u>

**(Discrimination Based on National Origin in violation of NYSHRL)**

136.     Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

137.     NYSHRL prohibits an employer from making employment decisions or from taking any personnel action affecting the terms, conditions, and privileges of one's employment based upon an employee's national origin or national-origin-based considerations.  N.Y. Exec. Law § 296.

138.     Plaintiff is an immigrant from Honduras. She left her home country because she is a transgender woman and faced gender-based violence and discrimination there.

139.     While she was in their employ, Defendants treated Plaintiff in a discriminatory fashion, including paying her less than the lawful minimum wage and refusing to pay her overtime wages, because of her status as a non-U.S. citizen and vulnerable immigrant woman.

140.    By discriminating against Plaintiff because of her national origin, Defendants violated the NYSHRL.

### Seventh Cause of Action:

### (Discrimination Based on National Origin in violation of NYCHRL)

141.    Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

142.    The NYCHRL prohibits discrimination based on national origin in New York City.  N.Y.C. Admin. Code § 8-101.

143.    The NYCHRL states it is an unlawful discriminatory practice for an employer, because of alienage, citizenship, or national origin, to discriminate against an employee in "compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107 (31)(c)(1)(3).

144.    Plaintiff is an immigrant from Honduras. She left her home country because she is a transgender woman and faced gender-based violence and discrimination there.

145.    While she was in their employ, Defendants treated Plaintiff in a discriminatory fashion, including paying her less than the lawful minimum wage and refusing to pay her overtime wages, because of her status as a non-U.S. citizen and vulnerable immigrant woman.

146.    By discriminating against Plaintiff because of her alienage, citizenship, and/or national origin, Defendants violated the NYCHRL.

### DEMAND FOR JURY TRIAL

147.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby requests a trial by jury on all issues so triable.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court:

(1)     Enter a final judgment declaring that Defendants violated:

      a.     The overtime and retaliation provisions of the FLSA, 29 U.S.C. §§ 207, 215;

      b.     The minimum wage, overtime, and retaliation provisions of the New York Labor Law, §§ 190 *et seq.*, §§ 200 *et seq.*, and §§ 650 *et seq.*;

      c.     The overtime provision of the New York Code, Chapter 12, § 142-2.2;

      d.     The prohibition against national origin discrimination in employment under the New York State Human Rights Law, N.Y. Exec. Law § 296(a), and;

      e.     The prohibition against discrimination on the basis of national origin, alienage, or citizenship under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a).

(2)     Enter a final judgment awarding Plaintiff actual, compensatory, and liquidated damages for injuries and expenses incurred as a result of the preceding violations of the FLSA and NYLL;

(3)     Enter a final judgment awarding Plaintiff actual, compensatory, and punitive damages for injuries and expenses incurred as a result of Defendants' discriminatory conduct pursuant to N.Y. Exec. Law § 297(9), and N.Y.C. Admin. Code § 8-502;

(4)     Enter a final judgment against Defendants for the maximum civil and criminal penalties permitted by all statutes cited herein;

(5)     Allow Plaintiff to recover reasonable attorney's fees, costs and disbursements pursuant to the FLSA and NYLL;

(6)     Grant such other and further relief, including equitable remedies, as this Court may deem just and proper.

Dated: New York, New York
         July 25, 2019

Respectfully submitted,

LEGAL SERVICES NYC
By: Veronica J. Cook
40 Worth Street, Suite 606
New York, NY 10013
Ph: (646) 442-3565
Fax: (646) 859-8091
*Counsel for Plaintiff*

MANHATTAN LEGAL SERVICES NYC
By: Denise Acron
40 Worth Street, Suite 606
New York, NY 10013
Ph: (646) 442-3168
Fax: (929)-269-8167
*Counsel for Plaintiff*